Roy John TAYLOR, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 7598, 7599.

United States Court of Appeals
Tenth Circuit.

July 9, 1964.

Sid White, Oklahoma City, Okl., for appellant.

John W. Raley, Jr., Asst. U. S. Atty. (B. Andrew Potter, U. S. Atty., on the brief), for appellee.

Before PHILLIPS, BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

Appellant was tried and convicted, in non-jury trials, upon each count of an indictment charging him with two separate violations of 18 U.S.C.A. § 111, and upon two counts of a second indictment charging him with violations of 26 U.S.C.A. §§ 5604(a) and 5686(a). He appeals asserting three grounds for a reversal: (1) The first indictment is legally insufficient to charge an offense under § 111; (2) certain evidence admitted at the trial on the second indictment was obtained by an illegal search and seizure and should have been excluded; and (3) the evidence is insufficient to support the judgments of conviction.

The facts are that some time prior to March 13, 1963, a "reliable" source informed an Internal Revenue Agent that Taylor, who resided in Oklahoma City, was engaged in the manufacture and distribution of non-taxpaid distilled spirits and that he had been making deliveries of it in the early morning hours in a

white 1962 Chevrolet Impala automobile. The agent determined that this car belonged to appellant's wife and bore license tag YH 3603. On the night of March 13, the Revenue Agents were in the vicinity of Taylor's residence and, while there, they detected the odor of fermenting mash but were unable to determine if it came from any of the buildings located on appellant's premises. Nevertheless, in the early morning hours on March 15, two of the federal agents stationed themselves near Taylor's residence in a position so that they could observe any activity there. Two more agents, together with local police, were stationed in a government car at the intersection of 108th Street and Midwest Boulevard, just north of Taylor's residence. Other federal agents and local police were in another government car stationed on further north of the first government car. The three parties were able to communicate with each other by means of radio.

At approximately 3:35 a. m., Taylor was observed leaving his residence in the white 1962 Chevrolet. He turned onto Midwest Boulevard and proceeded north toward the two government cars. The agents in the two cars were advised by radio that Taylor had left the premises and the car being driven by Agent Ohlsen, with Agent Carey as passenger, commenced moving north on Midwest Boulevard ahead of Taylor. As he passed the intersection where it was stationed, the second government car proceeded onto the Boulevard immediately behind him. After going north in this fashion for about 300 yards and according to a prearranged signal via radio, the car behind Taylor attempted to stop him by turning on its red lights and siren. At this same time, the car in front pulled into the center of the road and came to a stop, causing the appellant and the other government car to come to a stop also. The agents got out of their cars and shouted that they were "Federal officers". Ohlsen testified: " * * * as I got out of my car and started back towards the car that stopped behind me,

this car pulled out and went around to the left side of my car. I waved for him to stop. At that time, he whipped toward me. I placed my hands on the front of the car and vaulted out of the road and he went on past me and proceeded down the road at a high rate of speed." Carey testified: " * * * the defendant's vehicle, the 1962 Chevrolet, pulled around the left side of our car and by that time I had run around to the back of the Government car and was a little bit to the left of the Government car parked near the center of the road. The 1962 Chevrolet came on by our car and I observed Investigator Ohlsen with his hands push himself or vault away from the right front fender of the Chevrolet, and the Chevrolet continued on at a fast acceleration. And, I jumped out of the way and the car continued on north." He further testified that the Chevrolet swerved over toward him as it came around the government car and came within two or three feet of striking him. This testimony by the two agents was corroborated by other agents.

Taylor then proceeded north at a high rate of speed and both government cars pursued him. The chase lasted for about 40 minutes and continued over country roads at speeds in excess of 100 m. p. h. Eventually Taylor lost control of his car and ran into the ditch. He was placed under arrest and an immediate search of the car revealed 42 gallons of "moonshine" whiskey in the trunk. The whiskey was in half-gallon fruit jars, none of which bore federal revenue stamps. It should be noted here that the record is not clear as to whether Taylor was arrested for violation of the revenue laws or for assaulting the federal agents.

Appellant's argument as to the insufficiency of the first indictment is that it fails to allege an essential element of the offense, i. e., scienter or that he knew at the time the acts in question were committed that the persons alleged to have been assaulted were federal agents. In response to this argument, the Govern-

ment contends that scienter is not an essential element of the offense. However, we need not determine that issue in this case.[1] Following the words of the statute,[2] it is alleged in Count I of the indictment that on or about March 15, 1963, the appellant " * * * did forcibly assault, resist, oppose, impede, intimidate and interfere with Melvin W. Ohlsen, an officer of the United States Internal Revenue Service, while said officer was engaged in and on account of the performance of his official duties, in violation of Section 111, Title 18, U.S.C." Count II, pertaining to the alleged assault upon Agent Carey, contains identical allegations.

■ It has been held that an indictment under this statute charging the defendant with assaulting a deputy marshal while the latter was engaged in the performance of his official duties and "on account of" the performance of his official duties sufficiently alleged that the defendant was aware of the fact, and knew, that the deputy marshal was a federal officer at the time the assault was committed.[3] The court stated that " * * * an allegation averring that a defendant embarked upon a given course of conduct 'on account of'—or for the reason that—his victim was performing

official duties must necessarily imply the defendant's knowledge or awareness of the cloak of officiality with which his victim was garbed at the critical moment. * * * "[4] Thus, the indictment in this case must be construed as alleging that appellant knew at the time that the two persons he assaulted were federal officers.

■ The search of appellant's automobile and seizure of the 42 gallons of non-taxpaid whiskey were undertaken without the authority of a search warrant and therefore the contraband whiskey was admissible in evidence at the trial only if it was seized in a search incident to a lawful arrest.[5] This court has held that a moving vehicle or person may be intercepted and apprehended and searched without a warrant for contraband if there was probable cause to believe that the law was being violated and it was then impracticable to secure a warrant.[6] " * * * Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. * * * "[7]

1. Compare Hall v. United States, 5 Cir., 235 F.2d 248; Carter v. United States, 5 Cir., 231 F.2d 232, cert. denied, 351 U.S. 984, 76 S.Ct. 1052, 100 L.Ed. 1498; Owens v. United States, 4 Cir., 201 F.2d 749; and United States v. Bell, 219 F. Supp. 260 (E.D.N.Y.1963) with Bennett v. United States, 5 Cir., 285 F.2d 567, cert. denied, 366 U.S. 911, 81 S.Ct. 1087, 6 L.Ed.2d 236 and United States v. Bruce, 33 F.R.D. 133 (N.D.Miss.1963).

2. Section 111, in pertinent part, provides: "Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both."

3. Portnoy v. United States, 1 Cir., 316 F. 2d 486, cert. denied, 375 U.S. 815, 84 S.Ct. 48, 11 L.Ed.2d 50.

4. Id. 316 F.2d at 488.

5. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668; Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; United States v. One 1957 Ford Ranchero Pickup Truck, 10 Cir., 265 F. 2d 21. And, see Ker v. California, 374 U.S. 23, 34, 83 S.Ct. 1623, 10 L.Ed.2d 726.

6. United States v. One 1957 Ford Ranchero Pickup Truck, supra, 265 F.2d at 23.

7. Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. at 333. And, see Price v. United States, 10 Cir., 262 F.2d 684, 685.

We believe that, under the facts and circumstances of this case, the Revenue Agents had probable cause and reasonable grounds to believe that Taylor had not only committed the offense of assaulting federal officers while they were engaged in and on account of the performance of their official duties but that he also possessed and was transporting non-taxpaid distilled spirits. The offense of assaulting the federal officers was actually committed in the presence of the arresting officers. With respect to the offenses of transporting and possessing contraband whiskey, the agent had been informed by a reliable source that Taylor was committing those offenses in a certain manner at a specified time and such information alone has been held to constitute reasonable grounds or probable cause.[8] But here there was even more. The agents had detected the odor of fermenting mash in and around the premises owned and occupied by Taylor. They maintained a surveillance of those premises and, upon observing him leave in the early morning hours, attempted to apprehend him, but were at first unsuccessful because of his resort to flight. The element of flight is, of course, one more of the sum total of the circumstances that must be considered in determining probable cause.[9] We conclude that the Revenue Agents had probable cause to arrest Taylor for all of the offenses with which he was charged. This being so, the search and seizure was valid as an incident to a lawful arrest[10] and the evidence seized was clearly admissible.

In our opinion, the undisputed and uncontradicted evidence is clearly sufficient to support the judgments of conviction.

Affirmed.

8. Draper v. United States, supra; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879.

9. Dixon v. United States, 111 U.S.App.D.C. 305, 296 F.2d 427; Green v. United States, 104 U.S.App.D.C. 23, 259 F.2d 180, cert. denied, 359 U.S. 917, 79 S.Ct. 594, 3 L.Ed.2d 578.

10. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327; United States v. Rabinowitz, 339 U.S. 56, 70 S. Ct. 430, 94 L.Ed. 653; Mares v. United States, 10 Cir., 319 F.2d 71.