**UNITED STATES of America, Appellee,**

v.

**Harold Joe ROMERO, Appellant.**

**No. 73-1285.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 13, 1973.

Decided Oct. 9, 1973.

Winston Roberts-Hohl, Asst. Federal Public Defender, Albuquerque, N. M., for appellant.

Harris L. Hartz, Asst. U. S. Atty. (Victor R. Ortega, U. S. Atty., with him on the brief), for appellee.

Before CLARK, Associate Justice *, and SETH and McWILLIAMS, Circuit Judges.

SETH, Circuit Judge.

The defendant, Harold Joe Romero, was charged with a violation of 26 U.S. C. §§ 5861(d) and (i) and of § 5871, by reason of his possession of a sawed-off shotgun not registered in the National Firearms Registration and Transfer Record, and not bearing a serial number.

He was tried before a jury, found guilty, and has taken this appeal. The issues raised relate to the seizure of the weapon, the asserted duplicitous nature of the indictment, and the refusal to give an instruction that for guilt the jury must find the weapon to be a highly dangerous offensive weapon, and to be obvious to the possessor that the carrying of such a weapon would not be an innocent act.

The defendant, with four or five other men, entered the El Rancho Bar at the small community of Pojoaque, New Mexico, about 11:30 p. m. He went up to the bar and began drinking. A deputy sheriff, Frutoso Herrera, was on duty at the place of business and saw the defendant enter with several other persons, and noticed that he was wearing a gun in a gun belt around his waist. The defendant was wearing a large leather hat, leather vest, and Levis. There was another deputy on duty who was out of the room on defendant's arrival. When this deputy, William Trujillo, returned shortly thereafter, Deputy Herrera told him that defendant was in the bar, and was wearing a gun. The two deputies then went up to the defendant at the bar. One of them asked the defendant if he had a permit for the gun. The de-fendant replied, "what's it to you," or words to that effect. The deputies then took the defendant by the arm, escorted him outside the bar, and unbuckled the gun belt. A deputy took the gun out of the holster, opened it, and found that there was a live shell in the chamber. A deputy tested the gun later that night and found it would fire. The gun was originally a single-shot, single-barreled, twelve-gauge shotgun. The gun had been made between the years 1929 and 1935, before serial numbers were used, and had been owned by defendant's fam-ily for many years. The barrel had been cut off to a length of 9 to 10 inch-es, and the original stock designed to fit against the shoulder had been modified to a pistol type grip, making the overall length of the gun about 17 inches. When defendant was first seen by the deputy, the gun was in a holster on a belt around defendant's waist. There is no contention that the gun was con-cealed.

The defendant strongly urges that there was no justifiable cause for the deputies to seize the gun from the de-fendant. There was a hearing held on defendant's motion to suppress; both deputies and the defendant then testi-fied. The defendant described how he was escorted out of the bar by the depu-ties, and said he was told by them he was not supposed to be carrying a gun, that it was going to be kept that night because he was drinking, and that he could go to the "office" the next day and pick up the gun. He further testified that the deputies were going to see if the gun would fire. Deputy Trujillo tes-tified that he told the defendant he would give the gun back if it didn't work. He also testified that he asked defendant at the first encounter if he had a "permit." The deputies did not testify at the suppression hearing as to whether the gun while in the holster was recognized by them to be a pistol or a shotgun, and they were not questioned on the point.

---

* Associate Justice Retired of the Supreme Court of the United States, sitting by designation.

During the course of the trial the deputies appeared as witnesses. Deputy Herrera then testified that he ". . . noticed Mr. Romero walk into the bar carrying what I believed to be a shotgun." He then described the holster and belt. He described his request of defendant to produce a permit, and the removal of defendant from the bar. On cross-examination this deputy was asked what type of gun he saw strapped to defendant's thigh and he replied, "I saw a shotgun." He was four to six feet from the defendant who was at the bar. The deputy also said he waited for the other deputy because there were "about five" other persons with the defendant at the time, and he did not want to cause any trouble. The other deputy testified he held defendant by the arm when removing him from the bar because he did not want the gun "loose." He also testified that he was afraid at the time.

The New Mexico Court of Appeals has held that under the state constitution a person can carry a loaded gun which is not concealed although there may be a local ordinance to the contrary. City of Las Vegas v. Moberg, 82 N.M. 626, 485 P.2d 737. Defendant asserts that the seizure of the gun was not justifiable under state law.

 As indicated above, the deputies at the suppression hearing did not state whether they recognized the gun to be a shotgun before it was removed from the holster, and they were not questioned on the point. Assuming that the record shows no more than there was "a gun," we must nevertheless hold that there was cause for the removal of the defendant from the bar, and the examination of the weapon. A dangerous situation existed with the defendant carrying an unconcealed weapon, drinking in a bar late at night, accompanied by four or five others who had entered with him. The testimony of the deputies shows they were well aware that trouble could start under these conditions. This situation warranted an investigation and action by the deputies. They may have asked the wrong questions initially about a permit, as there is nothing in the record to show any was required or could be. But see Davida v. United States, 422 F.2d 528 (10th Cir.). The response to the question about a permit was, however, a further indication that a dangerous situation was developing. This removal of defendant, and the examination of the weapon to see if it was loaded and workable, was a proper and justifiable action. United States v. Miller, 452 F.2d 731 (10th Cir). The right to bear arms under the New Mexico Constitution or under City of Las Vegas v. Moberg, 82 N.M. 626, 485 P.2d 737, is not an absolute right, and defendant's rights under it were circumscribed by the conditions under which he sought to assert the right. We thus hold that the seizure, with the assumption, was proper under Fourth Amendment standards. See United States v. Anderson, 468 F.2d 1280 (10th Cir.). The general reasonableness standard under the Fourth Amendment is determined in a prosecution for a federal offense by federal law although the acts were by state officers. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889, for standards applicable under somewhat comparable conditions.

Also, as indicated above, one of the officers testified at trial that from the outset, he recognized the weapon to be a shotgun. Under this testimony, since the size of the weapon was evidence, further investigation and seizure were proper.

 As to probable cause, "practical considerations of everyday life" must prevail. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879. It would appear that the new subdivision (f) under Rule 41 of the Rules of Criminal Procedure has more clearly extended the inquiry to include new facts developed at trial in a pretrial denial of suppression which prevailed before. See also McRae v. United States, 137 U.S. App.D.C. 80, 420 F.2d 1283, a case under Rule 41(e), and United States v. Eagleston, 417 F.2d 11 (10th Cir.), for a hearing on a motion during trial.

 The defendant also asserts that his proposed instruction should have

been given to the effect that the weapon must be of such a dangerous character, and designed for offensive use, that it would be obviously improper to carry it. He cites United States v. Freed, 401 U. S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356, as authority for his point. We do not so read Freed. Instead it holds that a defendant may be convicted although he had no awareness that his acts were illegal. See also Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380, and Robbins v. United States, 476 F.2d 26 (10th Cir.).

As to the assertion that the indictment was duplicitous, we hold that if it was so, no possible prejudice could have been caused the defendant. The citations of the sections of the statute concerned clarified the allegations. United States v. Cowley, 452 F.2d 243 (10th Cir.). The sentences on the two counts were imposed as concurrent, and this is also proper. Robbins v. United States, 476 F.2d 26 (10th Cir.).

Affirmed.