**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gilberto NEVAREZ–ALCANTAR,
Defendant-Appellant.**

**No. 73-1707.**

United States Court of Appeals,
Tenth Circuit.

April 23, 1974.

the intent to distribute in violation of 21 U.S.C.A. § 841(a)(1).[1]

On April 12, 1973, Alcantar was riding as a passenger on a bus from El Paso, Texas, to San Francisco, California. While en route he became so intoxicated that he was forced to debus at Lordsburg, New Mexico. Alcantar left the bus with a locked suitcase. Shortly thereafter, at approximately 12:20 a. m., in the belief that he had arrived in San Francisco, Alcantar approached two Lordsburg police officers and requested that they drive him to an address which they immediately realized was not in Lordsburg.

Upon questioning by the officers, Alcantar identified himself by producing an Alien Registration Receipt Card; stating his address as San Francisco, California; and displaying a Republic of Mexico driver's license, issued one month previously, which listed his address of residence as Zaragoza, Chihuahua, Mexico. Each of the identification cards contained his photo. After arresting Alcantar for drunkenness, and after determining that he was a Spanish speaking alien, the officers took him to the United States Border Patrol office in Lordsburg.

At the Border Patrol office, Alcantar was questioned further by Agent Ashton. Alcantar was in possession of his suitcase during the interrogation. After questioning Alcantar, Ashton was not satisfied with his identification, inasmuch as the Alien Registration Card indicated that he was residing in the United States, whereas the driver's license stated a residence in Mexico. Ashton and the Lordsburg officers thereupon forcibly opened Alcantar's locked suitcase, in search of further identification. Upon opening the suitcase, Ashton discovered 13¼ ounces of heroin. Alcantar

Don J. Svet, Asst. U. S. Atty., Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., Albuquerque, N. M., on the brief) for plaintiff-appellee.

Winston Roberts-Hohl, Asst. Federal Public Defender, Albuquerque, N. M., for defendant-appellant.

Before LEWIS, Chief Judge, DURFEE, Judge, Court of Claims *, and BARRETT, Circuit Judge.

BARRETT, Circuit Judge.

Gilberto Nevarez-Alcantar appeals his conviction of possession of heroin with

---

* Honorable James R. Durfee, sitting by designation.

1. 21 U.S.C.A. § 841(a)(1) provides in part:
　(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) To manufacture, distribute, or dispense, or possess with intent to . . . . distribute, or dispense, a controlled substance; or . . . .

was subsequently charged under 21 U.S. C.A. § 841(a)(1).

Prior to his trial before the court, having waived a jury, Alcantar moved to suppress the heroin seized from his suitcase. Alcantar contended that the seizure which resulted from the search was: (1) without a warrant; (2) without probable cause; (3) without his consent; and (4) unreasonable when the terms and prohibitions of the Fourth Amendment are considered.

After a pre-trial evidentiary hearing the Court denied the motion to suppress, holding, inter alia: (1) that Alcantar was still intoxicated while being interviewed at the Border Patrol office; (2) that he did not consent to the search of his suitcase; (3) that he was arrested for intoxication; (4) that the search could therefore not be justified as incident to arrest; (5) that there was no danger that Alcantar could reach into the locked suitcase and grab a weapon or destroy any evidence; (6) that the search of the suitcase was not in any sense an inventory of Alcantar's personal property; (7) that the search was solely an effort to find more information establishing Alcantar's "identity"; and (8) that the officers had probable cause to search the suitcase for more information concerning Alcantar's identity.

On appeal, Alcantar contends that the Court erred in denying his motion to suppress. We hold that the trial court did not err.

Alcantar does not contend that the officers did not have probable cause to search the suitcase for further identification. Rather, he argues that under Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), a search, absent exigent circumstances, cannot be made without a search warrant. Further, he relies on United States v. Baca, 417 F.2d 103 (10th Cir. 1969), for the rule that one claiming to be exempt from the warrant requirement has the burden of establishing his exemptions.

The Fourth Amendment prohibits only an unreasonable search undertaken without a search warrant. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A border patrol agent may interrogate and search without a warrant, under 8 U.S.C.A. § 1357(a)(1) and (c):

> (a) Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant—
>
> > (1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States; . . . .
>
> \* \* \* \* \* \*
>
> (c) Any officer or employee of the Service authorized and designated under regulations prescribed by the Attorney General, whether individually or as one of a class, shall have power to conduct a search, without warrant, of the person, and of the personal effects in the possession of any person seeking admission to the United States, concerning whom such officer or employee may have reasonable cause to suspect that grounds exist for exclusion from the United States under this chapter which would be disclosed by such search.

Agent Ashton was not only expressly authorized to interrogate Alcantar, but, under the circumstances, he and the Lordsburg officers also had probable cause to search his locked suitcase for further identification. We agree with the following finding of the trial court:

> The officers had reasonable cause to inquire further as to the contradiction between the residence shown on the driver's license and his claim as to residence in the United States. They were justified in seeking further information to determine whether the defendant had violated any of the conditions of the Alien Registration Card so that it would not at that time be valid authority for the defendant to be in the United States. Particularly the fact that the card was five years

old, whereas the Mexican driver's license had been issued one month before would give cause to inquire as to the defendant's present right to be in the United States under the authority of the Alien Registration Card.

It is fundamental that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Terry v. Ohio, *supra*, at p. 22, 88 S.Ct. at p. 1880. And, under appropriate circumstances, police officers have a duty to approach, temporarily detain and question persons as to possible crimes, and investigate suspicious behavior, even though there are insufficient grounds for arrest. United States v. Saldana, 453 F.2d 352 (10th Cir. 1972); United States v. Sanchez, 450 F.2d 525 (10th Cir. 1971).

In determining probable cause "practical considerations of everyday life" must prevail. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); United States v. Romero, 484 F.2d 1324 (10th Cir. 1973). Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a prudent man into believing that an offense has been or is being committed. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v. Smaldone, 485 F.2d 1333 (10th Cir. 1973); Taylor v. United States, 334 F.2d 386 (10th Cir. 1964).

█ If the enforcement officers have probable cause to believe, as they did in the instant case, that the law is being violated in their presence (illegal entry into the United States), they may conduct a search of the person and portable personal effects in his immediate possession if it is impracticable to secure a warrant in those cases where the warrant is otherwise required. United

States v. One 1957 Ford Ranchero Pickup Truck, 265 F.2d 21 (10th Cir. 1959). In our judgment Agent Ashton and the Lordsburg police officers were confronted with facts and circumstances generating the basis for probable cause rather than bare suspicion. The issue, then, is whether, under the facts and circumstances, the search of Alcantar's suitcase, absent a search warrant, was violative of the Fourth Amendment. We hold that it was not.

The trial court ruled that the officers had probable cause to search Alcantar's suitcase without a search warrant for more information concerning Alcantar's "identity" in view of the fact that although Alcantar claimed to be a resident of San Francisco (consistent with his Alien Registration Card), his Mexican driver's license, issued only one month prior thereto, listed his residence as Zaragoza, Chihuahua, Mexico. Other information in the form of documents in the suitcase may have disclosed that Alcantar had illegally entered the United States.

Mr. Justice White, in his dissenting opinion in Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), observed that:

The judgment of Congress obviously was that there are circumstances in which it is reasonably necessary, in the enforcement of the immigration laws, to search vehicles and other private property for aliens, without warrant or probable cause, and at locations other than at the border.

413 U.S. at 293, 93 S.Ct. at 2549.

A logical nexus, we submit, involves a reasonable search of all personal effects on the person or in the possession of the person of Alcantar in light of the facts and circumstances confronting Agent Ashton and the Lordsburg police officers, i. e., that Alcantar was forced to depart the bus at Lordsburg because of his intoxicated condition; that he left the bus in possession of a ticket evidencing boarding at El Paso, Texas, enroute to San Francisco, California; that Al-

cantar did not speak English and did speak Spanish; that the Alien Registration Receipt Card and the driver's license exhibited to Agent Ashton gave rise to probable cause to search for other information in order to determine whether Alcantar was illegally in the United States; and that Alcantar was in possession of a suitcase which constitutes "personal effects in the possession of any person seeking admission to the United States" as expressed in 8 U.S.C. A. § 1357(c), *supra*.

Interpretive of the broad authority granted Border Patrol officials under the governing statutes above referred to, we observe that Mr. Justice Powell, in his concurring opinion in *Almeida-Sanchez, supra*, indicated that "roving patrols" would be constitutionally permissible under a broad search warrant which he opined would be justified and feasible as " . . . . incidental to the protection of the border and draw a large measure of justification from the Government's extraordinary responsibilities and powers with respect to the border." 413 U.S. 266 at 279, 93 S.Ct. at 2542. Congress intended that Service officers and employees shall exercise broad authority in conducting investigations necessary to protect all persons legally residing in the United States against the illegal entrance of aliens and the illegal importation of narcotics and other contraband.

The record evidences that two Lordsburg police officers acted in concert with Agent Ashton in forcibly opening the suitcase in Alcantar's possession. In United States v. Simpson, 453 F.2d 1028 (10th Cir. 1972), cert. denied 408 U.S. 925, 92 S.Ct. 2504, 33 L.Ed.2d 337 (1972), we held that incident to a lawful arrest a search may be conducted without a warrant of all portable personal effects on the person, or in the immediate possession of the person arrested, and that the discovery during such a search of objects or fruits which do not relate to the cause of arrest, but which provide grounds for prosecution of a crime unrelated to that for which the arrest was

effected, does not invalidate the search. This holding found support, further buttressing the trial court's ruling here, in the recent opinions rendered by the United States Supreme Court in United States v. Robinson, 414 U.S. 218, 94 S. Ct. 467, 38 L.Ed.2d 427 (1973), and Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). Both of these cases involved valid arrests for traffic violations. In the course of searches of the persons in each case, the arresting officers discovered narcotics which led to independent prosecutions. The Supreme Court upheld the searches and convictions, based upon the rule that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment, and that such a search may be made of the person of the arrestee and the area within his control.

■ We acknowledge that in *Simpson, Robinson* and *Gustafson*, the arresting officers proceeded on their own volition immediately following the arrests to conduct the subject searches, whereas in the instant case the Lordsburg police officers did not conduct the search of Alcantar's suitcase at the time he was arrested for drunkenness and in fact did so some ten to fifteen minutes later at the Border Patrol office in concert with Agent Ashton, apparently upon Ashton's suggestion. We do not believe that these circumstances are of such material variance from those in *Simpson, Robinson* and *Gustafson* to create a challenge to the rule applied in those cases upholding the searches as incident to a lawful arrest. In any event, we concur with the trial court's finding that probable cause did exist in the case at bar justifying the warrantless suitcase search.

Affirmed.

LEWIS, Chief Judge (concurring in the result).

It appears clear to me that the search and seizure which we here consider were justified as an incident to a lawful federal custodial arrest under the mandate

of United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427, and that it is thus unnecessary to explore the subjective reasons of the searching federal officer to establish probable cause. Nor does the fact that the search had a brief lag in time after arrest have Fourth Amendment significance. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668. Under *Robinson* it is the lawfulness of the custodial arrest that is critical and, once established, the search requires no further justification. In *Robinson* the contraband was contained within a package and here it was contained within a carried suitcase. Both required opening.