Michael E. **PAULDINO**, Petitioner-Appellant,

v.

**UNITED STATES** of America, Respondent-Appellee.

No. 73-1748.

United States Court of Appeals, Tenth Circuit.

Argued July 12, 1974.

Decided Aug. 7, 1974.

Rehearing Denied Sept. 9, 1974.

See also 10 Cir., 443 F.2d 1108.

Donald P. MacDonald, Denver, Colo. (James C. Fattor, Denver, Colo., on the brief), for petitioner-appellant.

Richard Slivka, Asst. U. S. Atty., Denver, Colo. (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for respondent-appellee.

Before LEWIS, BREITENSTEIN and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Michael Pauldino appeals from the denial of his habeas corpus application pursuant to 28 U.S.C.A. § 2255.

Pauldino was convicted on March 31, 1971 of interstate travel with intent to participate in gambling in violation of 18 U.S.C.A. § 1952.[1] During the trial the Government presented evidence showing that Pauldino was in the business of gambling, including evidence that: during 1966 he had stated under oath that he was a professional gambler; in September of 1966 he traveled

---

1. 18 U.S.C.A. § 1952 provides in part:

(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, . . .

(b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling, . . . .

to Nevada for the purpose of gambling; and in May of 1966 he had engaged others in a gambling affair while flying from Seattle, Washington, to Denver, Colorado. The Government also introduced as an admission (over Pauldino's objection that it was not relevant and had not been properly acquired), a copy of Pauldino's 1966 federal income tax return which stated his occupation as "gambler."

On appeal we affirmed. United States v. Pauldino, 443 F.2d 1108 (10th Cir. 1971), cert. denied, 404 U.S. 882, 92 S.Ct. 204, 30 L.Ed.2d 163 (1971). Therein we observed:

> Appellants further argue that it was error to admit the returns into evidence because, according to appellants, the jury may have inferred tax evasion due to the fact that the income reported on their returns was at odds with the evidence of their gambling winnings in 1966 . . . . Bridwell and Pauldino's returns were admitted solely to show that on appellants' respective 1966 returns each claimed that his occupation was gambling. Income reported on their returns was not referred to at trial, and in fact the reported incomes on the exhibits were not insubstantial so as to immediately suggest tax evasion.

> 443 F.2d at 1113.

Pauldino filed a habeas corpus application on July 20, 1973, alleging for the first time that the admission of his 1966 return was violative of his Fifth Amendment right against self-incrimination. In denying his application, the Trial Court found it unnecessary to consider Pauldino's constitutional argument in light of the following language which the Court quoted from our previous opinion:

> Representative of the evidence establishing this were appellants' respective tax returns for 1966 which acknowledged gambling as each's occupation. In addition, there was a wealth of undisputed testimony concerning appellants' gambling forays across the country, even extending into Canada. Suffice it to say that it was well established that appellants' trip to Nebraska was not an isolated gambling incident but was just one more roll of the dice in their continuing effort to fleece the lambs of the land.

> Tr. Vol. II, p. 26.

The sole issue presented by Pauldino here is whether the admission of his 1966 federal income tax return for the single purpose of establishing his occupation as that of a "gambler" was error violative of his Fifth Amendment rights. We hold that it was not.

In support of Pauldino's contention that the admission of the tax return was violative of his Fifth Amendment right against self-incrimination, he cites Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), and Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968). We considered a similar argument in United States v. Reeves, 425 F.2d 1063 (10th Cir. 1970). In distinguishing the cases above cited from our holding in *Reeves, supra,* we there noted that the federal statutes involved in the cited cases required registrations which, in turn, *"all required information about activities in an area 'permeated with criminal statutes'"* and applied to groups *"inherently suspect of criminal activities."* (Emphasis supplied).

Such is not the case here. We are here concerned only with a federal statute requiring the filing of an income tax return. That, in and of itself, does not create any inherent suspicion of criminal activities nor does it apply to groups "inherently suspect."

■ The filing of federal income tax information does not violate Fifth Amendment rights, inasmuch as such information is offered in a non-accusatorial setting. United States v. Smith, 484 F.2d 8 (10th Cir. 1973). And it is well

established that the United States has the right to gather information for the collection of revenue. Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). That right correlates with registration requirements rooted in regulatory statutes designed to protect and promote the public safety which have been held not violative of the privilege against self-incrimination. California v. Byers, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971); United States v. Nelson, 448 F.2d 1304 (10th Cir. 1971). The fact that such reports and/or the information contained therein may later appear in court to the detriment of the declarant is not controlling. As the Court noted in *Byers*:

> In each of these situations there is some possibility of prosecution—often a very real one—for criminal offenses disclosed by or deriving from the information that the law compels a person to supply. Information revealed by these reports could well be "a link in the chain" of evidence leading to prosecution and conviction. But under our holdings the mere possibility of incrimination is insufficient to defeat the strong policies in favor of a disclosure called for by statutes like the one challenged here.

402 U.S. at 428, 91 S.Ct. at 1538.

Under *Byers, supra,* self reporting, which is indispensable to the fulfillment of a legitimate governmental goal, and not designed to produce incriminating answers, does not violate Fifth Amendment rights.

We are persuaded by the logic of certain opinions which have recognized the necessity and propriety of this type of disclosure. In Stillman v. United States, 177 F.2d 607 (9th Cir. 1949), the Court held that the admission of certified copies of tax returns reporting illicit income did not compel defendants to testify against themselves in violation of their constitutional rights. This position was recently re-affirmed in Garner v. United States, 500 F.2d 228 (9th Cir. 1974). In *Garner, supra,* the Court held that the questions asked on a tax return are completely neutral so that only one filing a return knows whether his answers will be incriminating, and that, under these circumstances, he has a choice of claiming his privilege or answering the questions. Further, the Court held that the Fifth Amendment right against self-incrimination is a right which cannot be invoked retrospectively, but must be claimed when incriminating information is requested. In reaffirming the position it announced in *Stillman, supra,* the *Garner* Court quoted with favor from United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L. Ed. 1037 (1927):

> If the form of return provided called for answers that the defendant was privileged from making he could have raised the objection in the return, but could not on that account refuse to make any return at all. We are not called on to decide what, if anything, he might have withheld. Most of the items warranted no complaint. It would be an extreme if not an extravagant application of the Fifth Amendment to say that it authorized a man to refuse to state the amount of his income because it had been made in a crime. But if the defendant desired to test that or any other point he should have tested it in the return so that it could be passed upon.

P. 238.

In Shushan v. United States, 117 F.2d 110 (5th Cir. 1941), it was held that the utilization of tax returns to show the execution of a mail scheme is proper because the maker of the return is under oath and does not have to disclose any fact which may incriminate himself. Similarly, in United States v. Silverman, 449 F.2d 1341 (2nd Cir. 1971), cert. denied, 405 U.S. 918, 92 S.Ct. 943, 30 L. Ed.2d 788 (1972), it was held that records "required to be kept pursuant to a reasonable regulatory scheme have 'public aspects' and may be examined for evidence of criminal conduct."

In view of the substantial authorities supportive of admission, with which we agree, and the "wealth" of other evidence which established Pauldino's occupation as a gambler, we hold that the admission of the copy of his 1966 federal income tax return was proper.

Affirmed.