433 So.2d 88 (1983)
STATE of Louisiana
v.
Dr. Houston David HUGHES and Dr. Wilmer H. "Jack" Jackson.
No. 82-KK-2694.
Supreme Court of Louisiana.
May 23, 1983.
*89 Frederick A. Duhy, Jr., Robert E. Tillery, Baton Rouge, Henry H. Lemoine, Pineville, for relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Ralph Roy, Kay Kirkpatrick, Asst. Dist. Attys., for respondent.
MARCUS, Justice.
Houston David Hughes and Wilmer H. "Jack" Jackson were charged by the grand jury in the same indictment with two counts of theft in violation of La.R.S. 14:67[1] and twenty-five counts of filing false and fraudulent insurance claims in violation of La.R.S. 22:1462.[2] Defendants' motions to suppress evidence seized pursuant to a search warrant from their office located at 12841 Plank Road were denied by the trial judge.[3] The court of appeal denied defendants' application for writs noting that they had an adequate remedy by review in the event of conviction. Upon defendants' application to this court, we granted a writ under our supervisory jurisdiction to review the correctness of the ruling of the trial judge denying the motions to suppress the evidence seized from the Plank Road address.[4]
*90 The basis of the claim that the motions to suppress were improperly denied is that the search warrant was invalid because it was issued upon an affidavit insufficient to establish probable cause and did not particularly describe the things to be seized.
Defendants, who are dentists, opened the dental clinic on Plank Road about October 19, 1981. In early February 1982 (just sixteen months later), Dr. John F. Tomlinson, a dentist who had worked at the clinic for about two or three weeks, contacted Hillar C. Moore, an investigator with the district attorney's office, concerning the method of charging fees at the clinic, that is, that one price was given the patient while a higher price was reflected on the insurance claim form submitted to the insurance company. Thereafter, Moore consulted Allen W. Helm III, an assistant district attorney, and the investigation began. On February 5, 1982, Moore phoned Elizabeth Waddell, an employee at the clinic almost since its inception. Her duties included the billing of the insurance companies. Thereafter, Tomlinson, Waddell and Jill Sellers (another employee at the clinic) met with Moore at Tomlinson's house. From there, they went to the district attorney's office where they were interviewed by both Helm and Moore. Helm then prepared the search warrant and affidavit based upon the information obtained from these individuals. Moore executed the affidavit and the district judge issued the warrant on the same day (February 5, 1982) to search the dental clinic at the Plank Road address for the purpose of seizing:
1. Patient Treatment Records.
2. Insurance Claim Forms.
3. Laboratory Work Orders.
4. Daily Ledger Sheets.
5. Fee schedulesclients and insurance companies.
The search warrant was executed at 10:47 p.m. on that day.[5] The return of the search warrant indicates that the following items were seized:
1. Copies of Lab Records.
2. Daily Ledger Sheets.
3. Fee Schedules.
4. All Patient Files & Insurance Claim Forms.
The affidavit recited the following facts to establish probable cause for issuance of the search warrant:
On the 5th day of February, 1982, Hillar Moore, D.A. Investigator, 19th Judicial District, was contacted by Dr. John F. Tomlinson, Jr. DDS. Dr. Tomlinson practices dentistry together with Dr. William H. Jackson, and others, in the Hughes and Associates Professional Dental Corporation (aka Plank Road Dental Clinic). The corporate offices are located at 12841 Plank Road, Suite A, Baker, Louisiana. Dr. Tomlinson stated that Dr. Jackson has been defrauding insurance companies including but not limited to: Pan American, Providence, Metropolitan, Aetna, Blue Cross, and All State. Dr. Tomlinson reported that on the 19th of January, 1982, he was told by Dr. Jackson to utilize two different fee schedules in the preparation of claims against insurance companies. Dr. Jackson told Dr. Tomlinson the insurance carrier was to be charged a higher fee than that quoted the patient. Dr. Tomlinson averred that Dr. Jackson has caused the Insurance Claim Forms utilized by the corporation to be prepared so that the amount recorded as due from the insurance carrier almost always exceeds the fee recorded on the Patient Treatment Record and the Daily Ledger Sheets. Dr. Tomlinson stated he knows this because he has checked the Insurance Claim Forms against the Patient Treatment Records and the Daily Ledger Sheets on more than one occasion. Dr. Tomlinson further stated that he questioned Mrs. Beth Waddell, Office-Manager of the Plank Road Dental Clinic, concerning the discrepancies. Mrs. Waddell prepares all the office forms according to Dr. Tomlinson. Mrs. Waddell informed Tomlinson that Dr. Jackson ordered her *91 to utilize two separate fee schedules and to insure the Insurance Claim Form always has a higher fee than that recorded on the Patient Treatment Form and the Daily Ledger Sheet, which sheet also reflects the cost of dental services provided. Dr. Tomlinson stated he has seen Patient Treatment Forms before and after submission of the Insurance Claim Forms and on numerous occasions the Patient Treatment Form has been altered after submission of the Insurance Claim Form to conceal the discrepancy in the bill sent the insurance carrier. Dr. Tomlinson stated he was told by Mrs. Waddell that on January 3, 1982, Dr. Jackson ordered her to change the fee recorded on the Patient Treatment Record for James, Stacey, Shelley and Fay Hollis. Mrs. Waddell told Dr. Tomlinson that the claims manager for Pan American Insurance Co. had requested the Patient Treatment Record for each of the Hollises which prompted Dr. Jackson's order. Mrs. Waddell also said the Insurance Claim Forms had a higher fee than that originally recorded on the Patient Treatment Forms and Daily Ledger Sheets. Dr. Tomlinson stated the Insurance Claim Forms, Patient Treatment Records, and Daily Ledger Sheets are kept in the Plank Road office and are business records accessibel [sic] to and utilized by the employees of the corporation as well as insurance companies and patients. Dr. Tomlinson also stated the Laboratory Work Orders will reveal the disparity in the billing process. Dr. Tomlinson stated the Laboratory Work Orders and the fee schedules are also present in the corporate offices located at 12841 Plank Road, Baker, Louisiana.
Constitutional provisions insure a person from unreasonable search and seizure of his house, papers and effects. No such search or seizure shall be made except upon warrant issued upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. U.S. Const.Amend. IV; La. Const. art. 1, § 5. Conformably, our Code of Criminal Procedure in art. 162 provides in pertinent part:
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
We have held that probable cause exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been committed. The judicial officer must be supplied with enough information to support an independent judgment that probable cause exists for the issuance of a warrant. State v. Mena, 399 So.2d 149 (La.1981).
The facts recited in the above affidavit clearly indicate a pervasive scheme to defraud at the dental clinic. Basically, the plan was to submit false and fraudulent claims to insurance companies resulting in higher payments to defendants than that charged to the patients. The specific records kept on the premises were needed to prove the alleged facts. In addition, the information was furnished by credible named persons who would be in a position to know that the information was reliable. We are satisfied that the facts recited in the affidavit were sufficient for the judge to have determined that there was probable cause for issuance of the search warrant.
Next, we will consider defendants' contention that the warrant did not meet the particularity requirement of the fourth amendment.
General warrants, of course, are prohibited by the fourth amendment. "[T]he problem [posed by the general warrant] is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings.... [The Fourth Amendment addresses the problem] by requiring a `particular description' of the things to be seized." Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). This requirement "makes general searches ... impossible and prevents the *92 seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." Andresen v. Maryland, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965), quoting Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed.2d 231 (1927).
At the same time, the United States Supreme Court has recognized that effective investigation of complex white-collar crimes may require the assembly of a "paper puzzle" from a large number of seemingly innocuous pieces of individual evidence: "The complexity of an illegal scheme may not be used as a shield to avoid detection when the State has demonstrated probable cause to believe that evidence of this crime is in the suspect's possession." Andresen v. Maryland, supra, 427 U.S. at 481 n. 10, 96 S.Ct. at 2749 n. 10; United States v. Wuagneux, 683 F.2d 1343 (11th Cir.1982). It is universally recognized that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit. United States v. Wuagneux, supra, and cases cited therein. Thus, a careful balance must be struck between the need for particularity and the need for the known documents in business record seizure situations.
Although no United States Supreme Court case fully confronts the question, several lower federal court cases closely resemble the instant case.
In United States v. Abrams, 615 F.2d 541 (1st Cir.1980), the Department of Health, Education & Welfare (HEW) received information from former employees of Dr. Abrams and his associate, Dr. London, that in 1972 and 1973 medicare bills had been submitted for laboratory tests not actually done. Further information was received in September 1976 indicating that Dr. Braun, who shared office space with Abrams and London, had submitted a false claim for medicare payments of laboratory tests. A warrant was obtained to search the doctors' offices on April 20, 1977, in which it was stated:
[T]here is now being concealed certain property, namely evidence of a crime, to wit, certain business and billing and medical records of patients of Doctors Abrams, London, Braun, and Abrams, London and Associates, Inc. which show actual medical services performed and fraudulent services claimed to have been performed in a scheme to defraud the United States and to submit false medicare and medicaid claims for payments to the United States or its agents; in violation of Title 18, United States Code, Section 1001[.]
The court in holding that the warrant failed to meet the requirement of particularity found that the "officers' discretion was unfettered, there is no limitation as to time and there is no description as to what specific records are to be seized."
About a month after Abrams, with the same judge as organ of the court, United States v. Brien, 617 F.2d 299 (1st Cir.1980), cert. denied, was decided, 100 S.Ct. 1854, 64 L.Ed.2d 273. In Brien, which involved a company (Lloyd, Carr) engaged in the fraudulent sale of commodity options, the warrant read as follows:
Lloyd, Carr's bank statements, cash receipt books, option purchase records, sales material distributed to customers, employee compensation records, customer account records, sales training material and customer lists.
These materials constituted most of the business records of Lloyd, Carr. Although the search warrant was challenged on the lack of particular description of the things to be seized as well as on the lack of probable cause for its issuance, most of the opinion was directed to the claim of lack of probable cause. Nonetheless, the court held that "where there is probable cause to find that there exists a pervasive scheme to defraud, all the business records of the enterprise may be seized, if they are, as here, *93 accurately described so that the executing officers have no need to exercise their own judgment as to what should be seized."
In the instant case, as in Brien, there was probable cause to find the existence of a pervasive scheme to defraud. Moreover, the documents enumerated in the search warrant were evidence of or contained evidence of the existence of the scheme to defraud at the dental clinic. The insurance claim forms would show that the amounts recorded therein would exceed the fee recorded in the patient treatment records. The daily ledger sheets and the fee schedules reflected the cost of dental services provided. The laboratory work orders revealed the disparity in the billing process. Although it is disputed whether the files of patients who paid by cash were also seized, even if they were, these files were needed to compare with the files of patients whose charges were paid by insurance. In addition, because of the short time that the clinic had been in operation, the records seized were of rather recent origin. To the contrary, in Abrams, the only information received by HEW was that in 1972 and 1973 Abrams and London had submitted medicare bills for laboratory tests not actually done and that in 1976 (three years later) Dr. Braun had submitted a false claim for medicare payments of laboratory tests. The warrant was not issued until 1977. The records here, as in Brien, were accurately described so that the executing officers had no need to exercise their own judgment as to what should be seized. Moreover, it is difficult to see how the search warrant could have been made significantly more precise. State v. Flood, 301 So.2d 637 (La.1974); United States v. Timpani, 665 F.2d 1 (1st Cir.1981). Hence, we find that the warrant met the particularity requirement of the fourth amendment.
In sum, the trial judge did not err in denying defendants' motions to suppress the evidence seized from the dental clinic located at 12841 Plank Road.

DECREE
For the reasons assigned, the ruling of the trial judge denying defendants' motions to suppress are affirmed. The case is remanded to the district court for further proceedings.
DIXON, C.J., dissents with reasons.
CALOGERO, J., dissents and assigns reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent. Neither the affidavit for the warrant nor the opinion of the court demonstrate clearly that defendants probably committed theft or filed false and fraudulent insurance claims.
No facts are alleged to show a theft; there is only a statement by Dr. Tomlinson that one defendant "has been defrauding insurance companies." Defendant kept two fee schedules; the lower fee was entered on the patient record and the daily ledger; when an insurance claim form was used, the higher fee was entered. Without more facts, this action does not constitute a crime. For all we know, defendant and his patients understood that the higher charge would be used if defendant had to collect the bill by filing insurance forms. We are not told, in the affidavit, that the patients were informed of or billed with the lower fee. No one told the magistrate that the lower fee was the true one, nor that the higher fee was false.
CALOGERO, Justice, dissenting.
I respectfully dissent from the affirmance of the trial court's denial of defendants' motion to suppress. Defendants' contention that the search warrant was unconstitutionally broad and authorized an impermissible exploratory search has merit.[1]
General warrants authorizing exploratory searches are prohibited by the Fourth Amendment to the United States Constitution *94 and Article I § 5 of the Louisiana Constitution. The United States Supreme Court has clearly stated the particularity requirements of the Fourth Amendment in the often quoted opinion of Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927):
The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.
In Louisiana the search warrant should particularly describe the place to be searched and the persons or things to be seized. La. Const. art. I § 5; La.C.Cr.P. art. 162; State v. Fearn, 345 So.2d 468 (La.1977); State v. Lampkin, 253 La. 337, 218 So.2d 289 (La.1969). A general order to rummage through business records is not allowed. "The warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." (citations omitted) United States v. Cook, 657 F.2d 730, (5th Cir.1981).
Circumstances often make an exact description of the property impossible and in those cases the judicial officer issuing the warrant must weigh the practical necessities of law enforcement against the likelihood of a violation of the personal rights of the one whose premises and possessions are to be searched.

* * * * * *
The use of a generic term or a general description in a warrant, however, is acceptable to the judicial officer issuing the warrant only when a more specific description of the things to be seized is unavailable. Id.
This Court has placed emphasis on how specific a description is possible under the circumstances of the case. We have found sufficiently particular the description in a warrant if it would have been difficult for police "to arrive at a more specific description." State v. Flood, 301 So.2d 637, 643 (La.1974), cert. denied 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975). In the instant case, a more specific description was possible. Although the seizure of records involved in possible fraud might be difficult to adequately particularize in terms of certain documents, this warrant shows no real attempt at specificity.
Because business records may be seized and are not protected by the self-incrimination protection of the Fifth Amendment, Andresen v. Maryland, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), the warrant particularity requirement, along with the affidavit probable cause requirement under the Fourth Amendment, is the only protection against a general search of private papers. United States v. Namer, 680 F.2d 1088 (5th Cir.1982). See also United States v. Abrams, 615 F.2d 541 (1st Cir. 1980). Thus the description in the warrant of the evidence to be seized must be sufficiently particular.
To substantiate the use of a search warrant lacking particularity in the investigation of white-collar crimes, the majority opinion quotes a footnote from a United States Supreme Court opinion, Andresen v. Maryland, supra. In Andresen, a warrant issued to search the office of an attorney suspected of real estate fraud for the records concerning the sale of one particular lot. Andresen's language quoted by the majority that "[t]he complexity of an illegal scheme may not be used as a shield to avoid detection when the State has demonstrated probable cause to believe that evidence of this crime is in the suspect's possession," was preceded in the footnote by the warrant's particularized list of documents to be seized and the Supreme Court's statement that the complex scheme could only be proved by piecing together many bits of evidence. The quote is followed by the Court's statement that the documents were named with specificity in the warrant in Andresen. When probable cause has been demonstrated and the warrant is sufficiently particular, the criminal cannot be shielded by the complexity of the fraudulent scheme. The Supreme Court upheld the warrant in Andresen since it contained a *95 particularized description of the documents to be seized.
With no United States Supreme Court decision directly on point, the lower federal circuit opinions with similar circumstances become very relevant. In upholding the warrant, the majority cites United States v. Brien, 617 F.2d 299 (1st Cir.1980), cert. denied 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980), an opinion which, as even the majority concedes, was almost entirely directed to the issue of probable cause. The case is readily distinguishable from the instant case. In Brien the U.S. First Circuit notes repeatedly that the company whose management employees are appealing their convictions "was engaged in a very specialized business of selling London commodity options and that its entire operation was a scheme to defraud investors." 617 F.2d at 309, footnote 11. That fraudulently operating business is certainly distinguishable from that of a clinic legitimately providing services to dental patients. The only alleged fraud in the instant case involved the charging of higher fees to insurance companies. Brien's concentration on the probable cause issue explains the First Circuit's language quoted in the majority opinion: "where there is probable cause to find that there exists a pervasive scheme to defraud, all the business records of the enterprise may be seized, if they are, as here, accurately described so that the executing officers have no need to exercise their own judgment as to what should be seized." The pervasive scheme to defraud in Brien consisted of the entire business operation. Thus the U.S. First Circuit condoned the seizure of all the business records since all the records related to the fraudulent scheme, the sole purpose of the company. However, the federal court still required that the description be accurate so that discretion as to what items to seize would not be left to the executing police officers.
More relevant to the issue of warrant particularity is a slightly earlier opinion by the U.S. First Circuit, United States v. Abrams, supra, also mentioned in the majority opinion. In Abrams, former employees of doctors under investigation by the U.S. Department of Health, Education and Welfare were the source of information concerning alleged fraud in Medicare-Medicaid billing. The warrant authorized the seizure of "certain business and billing and medical records of patients ...." of the doctors under investigation. The U.S. First Circuit declared that the warrant with no guidance left to the discretion of the executing officers what records to seize. The officers seized all the records, both Medicare and non-Medicare. The U.S. First Circuit found that the warrant failed to meet the Fourth Amendment's requirement of particularity. See also United States v. Cook, supra;[2]United States v. Roche, 614 F.2d 6 (1st Cir.1980);[3]Montilla Records of Puerto Rico, Inc. v. Morales, 575 F.2d 324 (1st Cir.1979); United States v. Klein, 565 F.2d 183 (1st Cir.1977).
Search warrants for documents deserve closer scrutiny because of the potential for a serious intrusion into privacy, 2 W. LaFave, Search and Seizure 106 (1978), as *96 illustrated in the previously discussed and cited cases. The generally accepted test as to whether a warrant is sufficiently particular in its description of business records is whether the warrant places a "meaningful restriction" on the executing officers. Annot., 53 A.L.R.Fed. 680-90 (1981) at 682.
In the instant case, the search warrant authorized the indiscriminate seizure of numerous documents and business records. Even the affidavit only mentioned one specific file by name, that of the Hollis family. In the search warrant there was no limitation on what records could be seized. There was also no time frame limitation often considered necessary to meet the particularity requirement. Pieper v. United States, 604 F.2d 1131 (8th Cir.1979). The warrant could have been restricted to identifiable files, or, as relates to all files, such portions as would support the claim of dual billing. As worded, the warrant effectively authorized the seizure of all patient files and insurance claim forms and all daily ledger sheets and lab report copies, in addition to fee schedules. Because the warrant thus left it to the officers' discretion what exactly to seize, they in fact did seize virtually all client files and associated records.
Although Investigator Hillar Moore, stated at the Motion to Suppress Hearing that only files dealing with insurance claims were actually seized (except for "one or two" cash files that were mixed in), Allen Helm, the assistant district attorney who drafted the search warrant, admitted that the search warrant asked for patient treatment records which actually included records that did not involve insurance at all. Mr. Helm testified that "the reason was to search the charts to see which ones did deal with insurance...." The Return of the Search Warrant declared that all patient files had been seized. Dr. Hughes, who opened the door of the clinic in order for police to search, testified that all patient records were seized except for the Denta-Care files involving a direct dental contract with the clinic. In brief defendants claim that 4,500 pages were seized from the Plank Road office including patient x-rays and the files of patients of other dentists not involved in the investigation; after two weeks 4,000 pages were returned and only 500 pages were retained by the State. Mr. Helm conceded in testimony that it was necessary to look through all the records in order to find those that indicated the commission of a crime. The State actually seized numerous records and sifted through them in order to find those pertaining to insurance fraud or indicative of double billing.
The search warrant was unconstitutionally broad for it allowed a general exploratory search of the dental clinic records. Therefore, I respectfully dissent from the majority opinion.
NOTES
[1] La.R.S. 14:67 provides in pertinent part:

Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
[2] La.R.S. 22:1462 provides:

It shall be unlawful for any person intentionally to present or cause to be presented any written or oral statement as part of or in support of or denial of a claim for payment or other benefit pursuant to an insurance policy, knowing that such statement contains false information concerning any fact material to such claim. It shall be unlawful for any person intentionally to prepare or make any written or oral statement intended to be presented in connection with or in support or denial of any claim for payment or other benefit pursuant to an insurance policy, knowing that such statement contains false information concerning any fact material to such claim. Whoever violates any provision of this Section shall be fined not more than two thousand dollars or imprisoned for not more than one year or both.
[3] Evidence seized from defendants' other office located at 5211 Essen Lane was suppressed by the trial judge.
[4] 422 So.2d 421 (La.1982). The state did not apply for writs. Hence, the correctness of the ruling of the trial judge suppressing the evidence seized from the Essen Lane address is not before us.
[5] Helm stated that the warrant was executed at night to avoid embarrassment to defendants.
[1] So concluding, I do not attempt to resolve the alternate defense contention that the warrant was issued without probable cause.
[2] In United States v. Cook, 657 F.2d 730 (5th Cir.1981), the warrant directed the seizure of "[i]llegally obtained and reproduced copyrighted films ... and recorded video tape cassettes on to which these illegally obtained and copyrighted films ... have been electronically transferred and recorded, including but not limited to the motion pictures described in the affidavit...." The federal officers seized 1,317 items. The Fifth Circuit held that the warrant provided little guidance to the searching agents. The FBI agent affiant had obtained an entire list of the motion pictures illegally available through the defendants. The seizure, therefore, could have been carefully directed to the property likely to be evidence of illegality. The court did condone the seizure of motion pictures referred to in the warrant land listed in the affidavit; otherwise, the rest of the evidence taken was considered seized illegally.
[3] In United States v. Roche, 614 F.2d 6 (1st Cir.1980), the warrant to search the offices of several insurance agencies suspected of insurance fraud directed the seizure of "books, records, documents, consisting of but not limited to insurance applications, premium notices..." The First Circuit found the language too broad to meet constitutional requirements; the warrant could have been limited to documents relating to automobile insurance.